[833 NE2d 194, 800 NYS2d 51]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM RIVERA, Appellant.

Argued April 26, 2005; decided June 9, 2005

## POINTS OF COUNSEL

*Erica Horwitz,* New York City, and *Lynn W.L. Fahey* for appellant. Appellant was deprived of his due process and United States Constitution Sixth Amendment jury trial rights when, after conviction by a jury of unauthorized use of a vehicle in the second degree, a class E felony, he was adjudicated and sentenced as a persistent felony offender, over specific constitutional objection, based on numerous facts not found by a jury beyond a reasonable doubt, in violation of *Apprendi v New Jersey* (530 US 466 [2000]). (*Ring v Arizona,* 536 US 584; *McMillan v Pennsylvania,* 477 US 79; *Harris v United States,* 536 US 545; *People v Rosen,* 96 NY2d 329, 534 US 899; *Walton v Arizona,* 497 US 639; *Brown v Greiner,* 258 F Supp 2d 68; *People v Perry,* 161 AD2d 1156; *Almendarez-Torres v United States,* 523 US 224; *People v Besser,* 96 NY2d 136; *People v Hobson,* 39 NY2d 479.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Jane S. Meyers, Leonard Joblove* and *Ann Bordley* of counsel), for respondent. The trial court sentenced defendant in conformity with the ruling of the United States Supreme Court in *Apprendi v New Jersey* (530 US 466 [2000]), as applied in *Ring v Arizona* (536 US 584 [2002]) and *Blakely v Washington* (542 US 296 [2004]). (*People v Rosen,* 96 NY2d 329, 534 US 899; *Williams v New York,* 337 US 241; *Harris v United States,* 536 US 545; *United States v Tucker,* 404 US 443; *Almendarez-Torres v United States,* 523 US 224; *Jones v United States,* 526 US 227; *People v Frey,* 100 AD2d 728; *Brown v Greiner,* 258 F Supp 2d 68; *United States v Kempis-Bonola,* 287 F3d 699, 537 US 914; *United States v Davis,* 260 F3d 965.)

*Mischel, Neuman & Horn, P.C.,* New York City (*James E.*

*Neuman* of counsel), and *Richard D. Willstatter* for New York State Criminal Defense Lawyers and another, amici curiae. The persistent felony offender statutes violate the Sixth Amendment of the United States Constitution and article I, §§ 2 and 6 of the New York State Constitution. (*Apprendi v New Jersey,* 530 US 466; *Ring v Arizona,* 536 US 584; *Almendarez-Torres v United States,* 523 US 224; *People v Mason,* 277 AD2d 170, 96 NY2d 785; *People v Oliver,* 96 AD2d 1104, 63 NY2d 973; *People v Blackwell,* 32 AD2d 732; *People v Ortiz,* 180 Misc 2d 783; *People v Saracina,* 298 AD2d 953, 99 NY2d 564; *People v Brown,* 268 AD2d 593, 94 NY2d 945; *People v Garcia,* 267 AD2d 247, 94 NY2d 919.)

### OPINION OF THE COURT

ROSENBLATT, J.

Defendant asks us to overrule *People v Rosen* (96 NY2d 329 [2001]), in which we sustained the constitutionality of Penal Law § 70.10 and Criminal Procedure Law § 400.20 (5), the persistent felony offender statutes. After studying the Supreme Court's recent cases derived from *Apprendi v New Jersey* (530 US 466 [2000]), we uphold *Rosen,* the statutes and defendant's sentence as a persistent felony offender.

## Procedural Background

A jury convicted defendant of unauthorized use of a vehicle in the second degree, a class E felony (Penal Law § 165.06), which carries a maximum sentence of four years imprisonment (Penal Law § 70.00 [2] [e]). The People moved for a persistent felony offender sentence, so as to treat defendant's class E conviction as a class A-I felony (Penal Law § 70.10 [2]). This enhancement authorizes an indeterminate sentence with a maximum of life imprisonment (Penal Law § 70.00 [2] [a]; [3] [a] [i]). Defendant objected that the sentencing procedure violated his jury-trial rights under *Apprendi.* Relying on *Rosen,* the court overruled defendant's objection and held a hearing, at which the People presented evidence of the defendant's prior felony convictions. After the court was satisfied beyond a reasonable doubt that defendant had been previously convicted of at least two felonies, it declared defendant a persistent felony offender (CPL 400.20 [5]).

The court then began the next phase of the proceeding, in which it heard argument concerning defendant's history and character, and the nature and circumstances of his criminal

conduct, to determine whether "extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest" (CPL 400.20 [1]). Both sides submitted presentence reports regarding defendant's history and character. In arguing for a recidivist sentence, the People presented evidence that defendant had three prior felony convictions and 14 misdemeanor convictions, in addition to the two felonies that underlay his persistent felony offender status. The People also contended that defendant had used multiple aliases, had failed many times to comply with probation and parole conditions, had an ongoing drug addiction and would be unlikely ever to give up the lifestyle he supported by crime.

In opposition, defense counsel argued that defendant was not actively abusing drugs and that his history of substance abuse mitigated his prior crimes. Defense counsel also relied on the nonviolent aspect of defendant's criminal history, arguing that a recidivist sentence is too harsh for thefts.

The court then gave defendant a chance to speak on his own behalf, and explained the two-part nature of the proceeding:

> "[J]ust so you are clear, what you are addressing is the issue of your sentencing, both as a second felony offender as well as my discretionary determination as to whether or not I wish to sentence you as a persistent felony offender. That's the entire issue before me in terms of sentence. And of course, as you know, up to now, I have already made a finding that you qualify as a persistent felony offender. And the issue that we are addressing in that respect is whether or not your history, character, the nature and circumstances of your criminal conduct are such that extended incarceration and lifetime supervision of you is warranted to best serve the public's interest."

Defendant then addressed the court, expressing remorse, admitting his drug addiction problem, mentioning the death of his parents early in his life and asking for leniency.

The court reviewed some of defendant's convictions, noting they were uniformly connected with theft. It then pointed out that in defendant's presentence report, he described his violent abuse by his father, but in a much older probation report he claimed to have had a good father and a peaceful home. The court further found inconsistency between defendant's assertion of a life-long drug dependency and his stable employment

history. Next, the court reviewed the effect of the theft on the victim and defendant's apparent attempt to distract police so that the other occupant of the stolen vehicle could escape. The court also noted that the police found burglary tools in the vehicle. Having explained on the record why it felt that defendant deserved the recidivism sentence, the court imposed a term of 15 years to life imprisonment.

Defendant appealed, and the Appellate Division unanimously affirmed, relying on our holding in *Rosen*. A Judge of this Court granted leave to appeal and we now affirm.

The United States Constitution's Sixth Amendment provides every person accused of a crime the right to "trial, by an impartial jury."[1] Defendant asserts that our persistent felony offender statute (Penal Law § 70.10)[2] and the procedures for applying it (CPL 400.20)[3] violate the Sixth Amendment because a judge, rather than a jury, determines whether to hand down the maximum sentence of 25 years to life or something less.[4] The question before us is whether any facts beyond those essential

1. The federal right to a jury trial is binding on New York through the Fourteenth Amendment of the United States Constitution (*see Duncan v Louisiana*, 391 US 145, 149 [1968]).

2. This statute defines a "persistent felony offender" as one who "stands convicted of a felony after having previously been convicted of two or more felonies" and specifies that the prior felonies must have resulted in a sentence of "imprisonment in excess of one year, or a sentence to death" (Penal Law § 70.10 [1]). The statute further authorizes a court to sentence such an offender as if the crime were a class A-I felony (thereby permitting an indeterminate sentence with a maximum term of life imprisonment), "when [the court] is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest" (§ 70.10 [2]).

3. This statute declares that the recidivist sentence may be imposed when "the court (a) has found that the defendant is a persistent felony offender as defined in . . . the penal law, and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest" (CPL 400.20 [1]). The law goes on to require a hearing or hearings, at which the People must prove to the court, beyond a reasonable doubt, the fact of defendant's prior convictions, and either party may offer evidence (subject to a preponderance-of-the-evidence standard) bearing on the court's exercise of discretion as to whether a recidivist sentence is warranted (CPL 400.20 [5]-[9]).

4. Defendant also asserts that the facts that, in his view, must be found by the jury must also be alleged in the indictment (*see Jones v United States*, 526 US 227, 243 n 6 [1999]; *Apprendi v New Jersey*, 530 US 466, 476 [2000]). This argument turns on the same question as the jury-trial argument, and we reject it for the same reasons.

to the jury's verdict (other than prior convictions or admissions) were necessary for the trial judge to impose the persistent felony offender sentence (*see Blakely v Washington*, 542 US 296, 303-304 [2004]).

## The *Sole Determinant* for Whether Defendant is Subject to Persistent Felony Offender Sentencing is the Prior Convictions.

In *Rosen*, this Court held that after the People have proved that a defendant is a twice-prior convicted felon, the sentencing court may review the history, character and criminality factors (CPL 400.20 [5]) to determine whether to impose a recidivist sentence. Most pertinently, we further held that this statutory framework makes it clear that the prior felony convictions are the *sole determinant* of whether a defendant is subject to recidivist sentencing as a persistent felony offender (*Rosen*, 96 NY2d at 335). This is in keeping with Penal Law § 70.10 (1) (a), which defines a persistent felony offender simply as a defendant with two prior felony convictions. The statute authorizes indeterminate sentencing once the court finds persistent felony offender status. Penal Law § 70.10 (2), which says that a recidivist sentence may be imposed when the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest," describes the exercise of judicial discretion characteristic of indeterminate sentencing schemes.

Criminal Procedure Law § 400.20 (1) provides that a defendant may not be sentenced as a persistent felony offender until the court has made the requisite judgment as to the defendant's character and the criminality.[5] That statute implements, but does not change, the Penal Law § 70.10 definition of who is—and may be sentenced as—a persistent felony offender.

---

5. Even before the relevant statutes were adopted, the Commission on the Revision of the Penal Law and Criminal Code asserted that only the predicate felonies would be essential to a persistent felony offender sentence, and that the history and character determination merely guided the sentencing court's discretion (*see* Commn Staff Notes, reprinted following CLS, Book 7E, CPL 400.20, at 122 [1996] ["The Penal Law does not require proof of any background factor as a prerequisite for use of the special sentence. Under the Penal Law, if the defendant is shown to be a persistent felony offender, use of the special sentence is within the discretion of the court. Thus the procedure set forth in the CPL with respect to background factors other than prior convictions, gives the defendant rights to which he would otherwise not be entitled."]).

We could have decided *Rosen* differently by reading the statutes to require judicial factfinding as to the defendant's character and criminal acts *before* he became eligible for a persistent felony offender sentence. If we had construed the statutes to require the court to find additional facts about the defendant before imposing a recidivism sentence, the statutes would violate *Apprendi*. But we did not read the law that way. Under our interpretation of the relevant statutes, defendants are eligible for persistent felony offender sentencing based *solely* on whether they had two prior felony convictions. Thus, as we held in *Rosen*, no further findings are required. This conclusion takes defendant's sentence outside the scope of the violations described in *Apprendi* and its progeny.

The Supreme Court has held that a judge (as opposed to a jury) may find the fact of a defendant's prior conviction without violating the Sixth Amendment (*see Almendarez-Torres v United States*, 523 US 224, 226-227 [1998]). Defendant does not argue to the contrary. We are bound by this holding, which the Supreme Court has repeatedly reaffirmed (*see Apprendi*, 530 US at 487-490; *Blakely*, 542 US at 301; *United States v Booker*, 543 US 220, 244 [2005]). Although a majority of the present Justices of the Supreme Court have expressed disagreement with *Almendarez-Torres* (*see Shepard v United States*, 544 US 13, —, 125 S Ct 1254, 1264 [2005] [Thomas, J., concurring]), we recognize that Court's obvious prerogative to overrule its own decisions and we therefore follow *Almendarez-Torres* until the Supreme Court rules otherwise (*cf. Roper v Simmons*, 543 US 551, 594 [2005] [O'Connor, J., dissenting]). Here, the trial judge committed no Sixth Amendment violation by finding as fact that defendant had twice before suffered felony convictions.

After determining defendant's status as a persistent felony offender, the court went on to consider other facts in weighing whether to impose the authorized persistent felony offender sentence. In deciding against a lighter sentence, the trial court rejected defendant's contentions in favor of the People's. If, based on all it heard, the court's view of the facts surrounding defendant's history and character were different, the court might well have exercised its discretion to impose a less severe sentence.

Nevertheless, the relevant question under the United States Constitution is not whether those facts were essential to the trial court's opinion (CPL 400.20 [1] [b]), but whether there are

any facts other than the predicate convictions that must be found to make recidivist sentencing possible (*see Blakely*, 542 US at 303-304). Our answer is no. As we explained in *Rosen*, the predicate felonies are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism; that is why we pointedly called the predicate felonies the "sole" determinant (96 NY2d at 335).[6] By this unequivocal statement, we meant, and today confirm, that Criminal Procedure Law § 400.20, by authorizing a hearing on facts relating to the defendant's history and character, does not grant defendants a legal entitlement to have those facts receive controlling weight in influencing the court's opinion. The statutory language requiring the sentencing court to consider the specified factors and to articulate the reason for the chosen sentence grants defendants a right to an airing and an explanation, not a result.

In this respect, our statutes are quite similar to the federal sentencing statute, which requires federal sentencing courts to consider various factors, including "the history and characteristics of the defendant" (18 USC § 3553 [a] [1]). The Supreme Court recently upheld the statutory demand for sentencing courts to consider those factors, which do not require any jury factfinding (*see Booker*, 543 US at 245-246 [op of Breyer, J.]).

To reiterate our analysis in *Rosen*, a defendant adjudicated as a persistent felony offender has a statutory right to present evidence that might influence the court to exercise its discretion to hand down a sentence as if no recidivism finding existed, while the People retain the burden to show that the defendant deserves the higher sentence. Nevertheless, once a defendant is adjudged a persistent felony offender, a recidivism sentence cannot be held erroneous as a matter of law, unless the sentencing court acts arbitrarily or irrationally.

The court's opinion is, of course, subject to appellate review, as is any exercise of discretion. The Appellate Division, in its own discretion, may conclude that a persistent felony offender sentence is too harsh or otherwise improvident. In this way, the Appellate Division can and should mitigate inappropriately severe applications of the statute. A determination of that kind, however, is based not on the law but as an exercise of the Appel-

---

**6.** The Appellate Division understood our *Rosen* holding correctly in *People v Nelson* (16 AD3d 1172 [4th Dept 2005]), where it held that the prior felony convictions alone were enough to justify defendant's sentence as a persistent felony offender.

late Division's discretion in the interest of justice as reserved uniquely to that Court (CPL 470.20 [6]).[7]

In practical terms, the legislative command that sentencing courts consider the defendant's "history and character" and the "nature and circumstances" of the defendant's criminal conduct merely makes explicit what sentencing courts have always done in deciding where, within a range, to impose a sentence. The mandatory consideration and articulation of these factors is important in New York because, under Criminal Procedure Law § 470.20 (6), the Appellate Division itself exercises discretion in reviewing sentences and ameliorating harshness, even when those sentences are justified as a matter of law. The components of our statutes that require a sentencing court, in reaching its opinion under Criminal Procedure Law § 400.20 (1) (b), to consider the specified factors and explain why that consideration led the court to impose a recidivist sentence allows more complete review by the Appellate Division in the interest of justice. The practice, however, falls squarely within the most traditional discretionary sentencing role of the judge.[8]

---

**7.** *See e.g. People v Williams*, 239 AD2d 269, 269-270 (1st Dept 1997) (reducing a persistent felony offender sentence in the interest of justice, based on defendant's rehabilitation); *People v Evans*, 212 AD2d 626, 627 (2d Dept 1995) (setting persistent felony offender sentences for multiple counts to run concurrently rather than consecutively, because the sentence would otherwise be "harsh and excessive"). Some intermediate appellate decisions have reversed persistent felony offender sentences where the statutory procedures were not followed (*see e.g. People v Wilson*, 64 AD2d 782, 783 [3d Dept 1978]), but such decisions should not be read as requiring judicial factfinding as a necessary component to a persistent felony offender sentence. Rather, they insist that the sentencing court exercise its discretion according to legislatively-prescribed procedural rules that facilitate the exercise of the Appellate Division's discretion in the interests of justice. We note that there appears to be no analogue in the federal judiciary to our Appellate Division's authority to vacate or modify a sentence based on the interest of justice as opposed to on the law.

**8.** In New York, the exercise of this type of discretion has never fallen to juries, except in the unusual context of capital cases. In *Apprendi*, the challenged judicial finding concerned the defendant's motive for the crime, which was racial animus (*see Apprendi*, 530 US at 469-470). In *Ring*, the defendant was sentenced based on the judge's finding that (1) Ring was the actual killer, (2) Ring committed the crime in exchange for something of pecuniary value, and (3) Ring acted in an especially heinous, cruel way (*see Ring*, 536 US at 594-595). In *Blakely*, the judge found as fact that Blakely had committed the crime with deliberate cruelty (*see Blakely*, 542 US at 303). In *Booker*, the sentencing judge determined the quantity of drugs sold by Booker and that Booker had obstructed justice (*see Booker*, 543 US at 227). All of these prohibited judicial findings relate to the crime for which the

A number of federal trial courts have awarded (or have recommended awarding) writs of habeas corpus to state prisoners under a different view of our statutes.[9] These courts believed that our statutes would not permit the imposition of a recidivist sentence until the trial justice found facts about the defendant's history and character beyond the prior convictions. These courts might be correct, if their interpretation of our statutes were correct.[10] As we explained in *Rosen*, however, *no* additional fact-finding beyond the fact of two prior felony convictions is required under Penal Law § 70.10 or under Criminal Procedure Law § 400.20. If, for example, a defendant had an especially long and disturbing history of criminal convictions, a persistent

defendant was on trial and, as quintessential fact questions, would properly have been subject to proof before the jury, in stark contrast to traditional sentencing analysis of factors like the defendant's difficult childhood, remorse or self-perceived economic dependence on a life of crime (*cf. State v Rivera*, 106 Haw 146, 160, 102 P3d 1044, 1058 [2004] [distinguishing between "intrinsic" aspects of the crime itself, which must be proved to the jury, and "extrinsic" characteristics of the defendant, which are subject to judicial determination]).

Although we do not rest our decision on it, we note that the prohibited findings in these Supreme Court cases are thus readily distinguishable from the subjective determination by the sentencing court operating under our recidivism statutes in this case. Our statutes contemplate that the sentencing court—after it has adjudicated the defendant a persistent felony offender—will consider holistically the defendant's entire circumstances and character, including traits touching upon the need for deterrence, retribution and rehabilitation unrelated to the crime of conviction. This is different from the type of factfinding involved in *Apprendi*. In this respect, we note that in *Brown v Greiner* (409 F3d 523, 534 [2d Cir 2005]), the United States Court of Appeals for the Second Circuit described the contested second phase of our sentencing procedure as "a vague, amorphous assessment" of whether the public interest would be served through imposition of the recidivist sentence.

9.  *See Hernandez v Conway*, 2005 US Dist LEXIS 6826 (SD NY, Apr. 13, 2005, No. 03 Civ 0535) (decision pending before the District Court); *Kaua v Frank*, 350 F Supp 2d 848 (D Haw 2004); *Besser v Walsh*, 2003 WL 22801952, 2003 US Dist LEXIS 21474 (SD NY, Nov. 26, 2003, No. 02 Civ 6775) (decision pending before the District Court); *Brown v Greiner*, 258 F Supp 2d 68 (ED NY 2003), *revd* 409 F3d 523 (2005); *see also* Christopher H. Lindstrom, Note, *In the Shadow of Apprendi: People v. Rosen Reveals the Impractical Nature and Uncertain Future of Apprendi v. New Jersey*, 36 Colum JL & Soc Probs 103 (2002).

10.  The United States Court of Appeals for the Second Circuit's rejection of the habeas petitions in *Brown* (409 F3d 523 [2005]) confirms that *Rosen* was correctly decided based on *Apprendi*, but does not directly address the issue we consider today: whether *Rosen* remains good law in light of *Apprendi*'s progeny. As we have discussed, we hold that none of the United States Supreme Court's cases after *Apprendi* cast doubt on the continuing vitality of *Rosen*.

felony offender sentence might well be within the trial justice's discretion even with no further factual findings. Once the defendant is adjudicated a persistent felony offender, the requirement that the sentencing justice reach an opinion as to the defendant's history and character is merely another way of saying that the court should exercise its discretion.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE (dissenting). I begin by stating two points of agreement with the majority.

*First,* I agree that *People v Rosen* (96 NY2d 329 [2001]) was correct at the time it was decided. The defendant in *Rosen* brought his challenge on the basis of *Apprendi v New Jersey* (530 US 466, 490 [2000]), in which the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Since it was the fact of two prior convictions "that initially subjected defendant to enhanced sentencing" (*Rosen,* 96 NY2d at 334), we held that there was no violation of *Apprendi,* concluding that *Apprendi* required a jury to decide only those facts (other than recidivism) that determine a defendant's threshold eligibility for an increased sentence.

*Apprendi* made clear that sentencing courts may continue to exercise their discretion in imposing sentence within the range of sentences prescribed by the statute defining an offense (*see* 530 US at 481). We reasoned that since a defendant becomes eligible for persistent felony offender treatment based on prior felony convictions, a judge may, consistent with *Apprendi,* find the facts that must then be established before an increased sentence may be imposed.

Since *Apprendi,* however, the Supreme Court has periodically revisited its holding (*see e.g. Ring v Arizona,* 536 US 584 [2002]; *Blakely v Washington,* 542 US 296 [2004]). Most significantly, in *Ring* the Court overruled its decision in *Walton v Arizona* (497 US 639 [1990]), which at the time of *Apprendi*—and *Rosen*— was still good law.[1] The Arizona capital sentencing scheme upheld in *Walton* had allowed a judge, sitting without a jury, to find an aggravating circumstance that was statutorily necessary

---

1. Indeed, in *Rosen,* the Attorney General argued to us that the New York persistent felony offender statute was functionally identical to the Arizona capital sentencing scheme, at that time held constitutional in *Walton.*

for imposition of the death penalty. This scheme was thought not to violate the constitutional right to a jury trial because a defendant sentenced by a judge to death had been rendered initially eligible for that penalty upon conviction by a jury of first-degree murder. Since the Arizona statute specified that the only available sentencing options for a defendant convicted of first-degree murder were either death or life imprisonment, a defendant sentenced by a judge to death had thus been sentenced "within the range" of punishment authorized for the crime by the jury verdict, as *Apprendi* permits (*see Apprendi*, 530 US at 481 [sentencing judges may "exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a [sentence] *within the range* prescribed by statute"]). That being so, there was no violation of the *Apprendi* rule that any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury.

In *Ring,* however, the Supreme Court, in overruling *Walton,* rejected this reasoning, for the first time making clear that *all* facts (other than recidivism) that must be found in order to increase a sentence beyond the maximum—regardless of whether they relate to the defendant's threshold eligibility for the increased sentence—must be found by a jury beyond a reasonable doubt.[2] Thus, inasmuch as *Walton* was not overruled until *Ring,* the decision in *Rosen* neither was contrary to, nor involved an unreasonable application of, *Apprendi* at the time it was decided (*see Brown v Greiner*, 409 F3d 523 [2d Cir 2005]).

*Second,* I agree that the statutory scheme the Court describes would pass constitutional muster. The problem, though, is that the statute as construed by the majority was not before today the law in New York.[3] The language of the statute is plain, and reflects the intent of the Legislature, that not every two-time

---

2. An additional point deserves mention. *Rosen* was correct when it was decided, and based on the Court's decision here, remains good law today. But even if it were not, state trial courts are bound to follow existing precedent of a higher court, even though they may disagree (*cf. People v West*, 2 Misc 3d 332, 336 [Sup Ct, NY County 2003], *revd* 12 AD3d 152 [1st Dept 2004]; *People v Cephas*, 2003 NY Slip Op 51068[U], *9 [Sup Ct, NY County, May 23, 2003]).

3. The statutes at issue here involve only "persistent felony offenders"—defendants with respect to whom at least one of the relevant prior or current felonies is nonviolent. Sentencing ranges for "persistent violent felony offenders"—defendants with two prior and one current violent felony offense—are separately provided for in Penal Law § 70.08, which is not challenged here and

(nonviolent) recidivist is eligible, without more, to be sentenced to an indeterminate life term. Only some are.

True, a persistent felony offender is defined "simply as a defendant with two prior felony convictions" (majority op at 66; see Penal Law § 70.10 [1]). But under the statute a defendant's classification as a persistent felon does not in and of itself subject the offender to enhanced punishment. Fitting the definition of a persistent felony offender under Penal Law § 70.10 (1) is necessary but not sufficient to render a defendant eligible for enhanced sentencing under CPL 400.20. Rather, an enhanced sentence is available only for those who additionally are found to be of such history and character, and to have committed their criminal conduct under such circumstances, that extended incarceration and lifetime supervision will best serve the public interest (see Penal Law § 70.10 [2]). The persistent felony offender statute thus stands in stark contrast to Penal Law § 70.08, which requires that all three-time violent felons be sentenced to an indeterminate life term on the basis of the prior convictions alone.

I cannot agree that the second prerequisite is merely optional. The statutory command is clear: Enhanced punishment "may not be imposed" unless the court makes two findings—that is, unless the court (1) has found the necessary prior convictions, and (2) is of the opinion that the history and character of the defendant and the nature and circumstances of his or her criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest (CPL 400.20 [1]). Each finding must be "based upon evidence in the record of a hearing held pursuant to" CPL 400.20 (id.). The reasons for the court's conclusion must be set forth in the record (see Penal Law § 70.10 [2]).

That the statute calls this finding of fact an "opinion" is of no moment. Blakely makes clear that any factfinding essential to sentence enhancement must be decided by a jury, even if it is general and unspecified in nature,[4] and even if the ultimate sentencing determination is discretionary. "Whether the judge's authority to impose an enhanced sentence depends on finding a

___

is, in any event, clearly constitutional under *Almendarez-Torres v United States* (523 US 224 [1998]).

4. Thus, the statute held unconstitutional in *Blakely* authorized the sentencing court to impose an enhanced sentence if it found "substantial and compelling reasons justifying an exceptional sentence" (542 US at 299).

specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact" (542 US at 305). "Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence" (542 US at 305 n 8).

Under CPL 400.20, the court's conclusion must be based on factfindings made after a hearing at which the People have the burden of proof by a preponderance of the evidence[5] —a statutory requirement the majority minimizes. Further, after determining that the defendant qualifies as a persistent felony offender on the basis of prior convictions, the court *"must* then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted" (CPL 400.20 [9] [emphasis added]).[6] The majority nevertheless construes the statute as requiring *"no* additional factfinding beyond the fact of two prior felony convictions" (majority op at 70). I cannot agree with the Court that the Legislature's "must" means "need not."

Indeed, the Appellate Division has repeatedly vacated persistent felony offender sentences for failure to follow the procedures or make the findings mandated by CPL 400.20 (*see e.g. People v Wilson*, 64 AD2d 782, 782-783 [3d Dept 1978]; *People v Perry*, 161 AD2d 1156, 1157 [4th Dept 1990]; *People v Smith*, 232 AD2d 586, 586-587 [2d Dept 1996]; *People v Garcia*, 267 AD2d 247, 247-248 [2d Dept 1999]). The Court erroneously

---

**5.** "Upon any hearing held pursuant to this section the burden of proof is upon the people. . . . Matters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct may be established by any relevant evidence, not legally privileged, regardless of admissibility under the exclusionary rules of evidence, and the standard of proof with respect to such matters shall be a preponderance of the evidence" (CPL 400.20 [5]; *see also* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 400.20, at 274 [1994] ["the district attorney is required to present evidence to support the allegations of bad character"]).

**6.** Indeed, if the hearing is terminated without a finding, "the defendant *may not* be sentenced as a persistent felony offender" unless the court "recommences the proceedings and makes the necessary findings" (CPL 400.20 [10] [emphasis added]).

implies that these reversals must have been made in the interest of justice (*see* majority op at 68-69, 69 n 7), but the Appellate Division thought otherwise (*see Wilson*, 64 AD2d at 783 [modifying "on the law and the facts"]; *Perry*, 161 AD2d at 1156 ["on the law"]; *Smith*, 232 AD2d at 586 ["on the law"]; *Garcia*, 267 AD2d at 247 ["on the law"]; *see also* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 400.20, at 274 [1994] ["enhanced sentence must be based not only upon the requisite predicate offenses; but also upon facts regarding the overall history and character of the defendant"; "findings of fact with regard thereto" are required]; Association of Justices of the Supreme Court of the State of New York, Bench Book for Trial Judges—New York § 60 [D] [1] [d] [1] ["court must make findings of fact relevant to whether persistent felony sentence is warranted"]).

The Court declares that the prohibited judicial findings in *Apprendi, Ring, Blakely* and *United States v Booker* (543 US 220 [2005])—which "relate[d] to the crime for which the defendant was on trial" (majority op at 69 n 8)—are "readily distinguishable from the subjective determination by the sentencing court operating under our recidivism statutes in this case" (*id.* at 70 n 8). In doing so, however, the Court focuses exclusively on the "history and character" prong of the sentencing court's "opinion," while downplaying the statutory requirement that a judge also make findings as to the "nature and circumstances of [the defendant's] criminal conduct."

Here, in support of his determination that enhanced punishment was warranted, the sentencing Judge made a number of findings that related to the crime for which defendant was on trial. Specifically, although defendant was not charged with the theft of the vehicle that he used without authorization, the Judge found that its owner had been deprived for four days of his work van and tools—and therefore of his ability to earn a livelihood during those days—thus making findings about the extent of the harm to the victim. The Judge further found that defendant ran a red light while driving the van; that, after being stopped by the police, he aided in the escape of his passenger and resisted his own arrest; and that he possessed burglar's tools. None of these facts—all of them relating to the

crime charged—was found by the jury.[7] On the basis of these and other findings, defendant—who would otherwise have been subject to a maximum sentence of 2 to 4 years' imprisonment for the class E nonviolent felony of which he was convicted—received a sentence of 15 years to life.

In recasting the statute as one in which a defendant bears the burden of demonstrating that an enhanced sentence is *not* warranted, the Court ignores both the language and the intent of the law. By requiring that a court hold a hearing and make findings before it could impose a persistent felony sentence, the Legislature sought to limit the availability of enhanced punishment to a subclass of persistent offenders. Today, however, the majority announces that every three-time nonviolent felon is automatically eligible, without more, for a potential life sentence. That decision is for the Legislature, not the Court.

CIPARICK, J. (dissenting). Because I believe that *Apprendi v New Jersey* (530 US 466 [2000]), as reaffirmed and clarified by *Ring v Arizona* (536 US 584 [2002]), *Blakely v Washington* (542 US 296 [2004]), and *United States v Booker* (543 US 220 [2005]), compels a different result, I respectfully dissent from the majority opinion.

The majority offers an interpretation of our discretionary persistent felony offender sentencing statute that purportedly does not violate a defendant's Sixth Amendment constitutional rights. However, the description as proffered is not consistent with the plain language of Penal Law § 70.10 and CPL 400.20 nor does it comply with the mandates of recent United States Supreme Court holdings. In essence, the majority has rewritten the statute.

My discussion begins with *Apprendi v New Jersey*. There the United States Supreme Court invalidated a law that allowed a judge to increase a sentence beyond the statutory maximum where the judge determined that the proven offense also constituted a hate crime. That statute clearly required that the judge make a finding of fact of an element beyond the scope of the charged crime. The effect of the statute was to take a typical role of the jury away from it and place it in the hands of the

---

7. Although defendant was originally charged with the traffic infraction and the possession of burglar's tools, these counts were not considered by the jury. However, the sentencing court stated, "And I would note, of course, the evidence did show, although it didn't go to the jury, the jury didn't have to make a finding of it, that you had some damn good burglar's tools in the van."

judge who would make such findings by the mere preponderance of the evidence.

Judicial factfinding of an element of a crime was not in our opinion the same as determining the appropriateness of enhanced sentencing based on prior felonies. Thus we held in *People v Rosen* (96 NY2d 329 [2001]) that New York's discretionary persistent felony offender statute did not offend *Apprendi*'s notion of Sixth Amendment rights. In doing so, we recognized the longstanding principles of granting judges discretion in sentencing and protecting the public from recidivist felons (*see Rosen*, 96 NY2d at 335). We further found that the statute should be read solely as being triggered by prior convictions (*see id.*). Only after the prior convictions are apparent does the court look to the second part of our discretionary persistent felony offender statute and consider the "history and character" of defendant to determine whether persistent felony offender treatment is warranted (*id.*). I believe that this interpretation is no longer viable in light of recent United States Supreme Court cases which have redefined the purview of the Sixth Amendment.

The year after we decided *Rosen* the United States Supreme Court expanded upon *Apprendi*'s rationale in *Ring v Arizona*, which overruled *Walton v Arizona* (497 US 639 [1990]).[1] The Arizona statute at issue in *Ring* and *Walton* provided that a defendant may not be sentenced to death for first degree murder unless the judge makes further determinations as to the existence of aggravating and mitigating factors, comparable to the "history and character" analysis under our statute. The Court in striking down the statute reiterated that the "dispositive question . . . 'is one not of form, but of effect' " (*Ring*, 536 US at 602, quoting *Apprendi*, 530 US at 494). The Court further made clear the broad scope of the holding by stating that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt" (*Ring*, 536 US at 602). Whereas the maximum

---

1. In *Walton*, the Court found that Arizona's capital sentencing scheme, allowing a sentencing judge to find an aggravating circumstance, did not violate the Sixth Amendment. However, in light of *Apprendi*, the Court reversed itself when it revisited the issue in *Ring* and found "because Arizona's enumerated aggravating factors [for imposing a death sentence] operate as 'the functional equivalent of an element of a greater offense,' . . . the Sixth Amendment requires that they be found by a jury" (536 US at 609, quoting *Apprendi*, 530 US at 494 n 19).

sentence based on the jury's findings was life imprisonment, the United States Supreme Court found it improper to permit the trial judge to determine other factors that could result in the imposition of a sentence of death.

The Supreme Court spoke again on this issue in *Blakely v Washington*, where it invalidated a statute that permitted the judge to consider the level of "cruelty" used in committing the crime for the purposes of enhancing a sentence. The Court stated "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' . . . and the judge exceeds his proper authority" (*Blakely*, 542 US at 304, quoting 1 J. Bishop, Criminal Procedure § 87, at 55 [2d ed 1872]). Further elucidation on what Supreme Court meant by "statutory maximum" came in *Blakely*, where it stated that the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*" (*Blakely*, 542 US at 303, citing *Ring*, 536 US at 602). The Court at great length explained that "the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power" (*Blakely*, 542 US at 308). To the extent that these holdings would likely result in a greater burden on the nation's court systems, the Court stated "our decision cannot turn on whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice" but rather turns on the need to preserve the rights enumerated by the Constitution (542 US at 313).

This year, the Supreme Court has once again illustrated the renewed strength of the Sixth Amendment when it struck down parts of the federal sentencing guidelines in *United States v Booker*.[2] The Court held that a judicial determination of any factor that elevates the maximum possible sentence above the range authorized by a jury finding of guilt of a particular offense or a defendant's admission violates the Sixth Amendment

---

2. The Court found 18 USC § 3553 (b) (1) (providing that a judge must follow the sentencing guidelines unless it is determined that there exists an aggravating or mitigating factor that warrants a different sentence) and 18 USC § 3742 (e) (providing a standard of review for section 3553 sentences) to be unconstitutional. After excising these portions, the Court ruled that the guidelines should be used in an advisory fashion and sentences should be "tailor[ed] . . . in light of other statutory concerns" (*Booker*, 543 US at 245-246).

(543 US at 232). As in its prior cases, the Court reiterated that there is nothing wrong with judicial discretion within a sentence range that was authorized by the jurors' verdict or admitted by defendant, but once that range changes based on factfinding by the court, the jurors' role has been diminished and the Sixth Amendment is invoked (543 US at 235). The Court further noted that the increasing reliance on judicial factfinding for purposes of sentencing has increased the judge's power while reducing that of the jury. "It became the judge, not the jury, that determined the upper limits of sentencing, and the facts determined were not required to be raised before trial or proved by more than a preponderance" (543 US at 236).

Thus, the United States Supreme Court has aggressively redrawn the parameters of Sixth Amendment rights to counter-attack what it perceives as a systematic gradual erosion of the role of the juror; which is alarming because it removes the jury from shielding defendants from the State as guaranteed by our Constitution.

Today, we are faced with a renewed challenge to Penal Law § 70.10 and its procedural sister CPL 400.20. Our earlier analysis under *Rosen* that it is merely a recidivist statute—which alone is acceptable under *Apprendi* and *Almendarez-Torres v United States* (523 US 224 [1998])[3] —is no longer apt. The *Apprendi* court framed this exception as one of narrow scope stating "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (530 US at 490). However, contrary to the majority's analysis here, our inquiry does not end at recidivism. Instead recidivism is one of two material findings that must be made before an enhanced sentence can be imposed. Although the majority wishes now to separate itself from this second prong and its explicit role in determining an enhanced sentence, we did acknowledge its existence in *Rosen*. We held that after finding the requisite prior felonies "the court must consider other enumerated factors to determine whether it 'is of the

---

**3.** While the recidivist exception as set forth in *Almendarez-Torres* is presently good law, its viability has been called into question. In his concurring opinion in *Shepard v United States* (544 US 13, —, 125 S Ct 1254, 1264 [2005]), Justice Thomas, who was part of the 5-4 majority opinion in *Almendarez-Torres*, has expressly denounced his vote and feels that the holding is no longer viable in that case in light of the Court's post-*Apprendi* holdings.

opinion that a persistent felony offender sentence is warranted' '' (96 NY2d at 335, quoting CPL 400.20 [9]).

To read Penal Law § 70.10 and CPL 400.20 as solely a recidivist statute disregards its plain language. The second prong explicitly requires a judge to review facts that exceed the scope of those found by a jury or admitted by the defendant, to formulate an opinion as to the "history and character" of the defendant and the "nature and circumstances of his criminal conduct" and to determine whether "life-time supervision will best serve the public interest" (Penal Law § 70.10 [2]; *see also* CPL 400.20 [1] [b]). A record of the basis for the sentencing court's findings must also be set forth (*see* Penal Law § 70.10 [2]; CPL 400.20 [3] [b]). For the majority to state that prior felonies alone are a sufficient basis for sentencing under Penal Law § 70.10 is thus contrary to plain language of the statute (*see* majority op at 67, 68). This is where, in my opinion, the majority's rationale fails, as it attempts to fit the discretionary persistent felony offender statute within the narrow recidivism exception of *Apprendi* and effectively reads out the second prong of the statute.

The statutory scheme described by the majority is simply not that enacted by the Legislature. Had the Legislature intended for the inquiry to end at recidivism, it could, for example, have replicated the language of Penal Law § 70.08, which mandates sentencing for persistent violent felony offenders based solely on recidivism, or it could have used the language of Penal Law § 70.04 or § 70.06 as it relates to second felony offenders and second violent felony offenders. Those statutes do not require, as do Penal Law § 70.10 and CPL 400.20, that to fall subject to an enhanced sentence there needs to be further factual findings by the sentencing judge beyond that of determining the existence and constitutionality of prior convictions beyond a reasonable doubt nor that such further factual findings such as "history and character" be made upon the preponderance of the evidence.[4]

We can no longer distinguish our statute as it bears too much of a resemblance to the statutes struck down in *Ring* and

---

4. CPL 400.20 reads in part:
"Matters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct may be established by any relevant evidence, not legally privileged, regardless of admissibility under the exclusionary rules of evidence, and the standard of proof with respect to such matters shall be a preponderance of the evidence" (CPL 400.20 [5]).

*Blakely*. Where a statute, like ours, considers facts beyond recidivism that were neither proven to the jury beyond a reasonable doubt nor admitted by a defendant for the purpose of enhancing a sentence beyond the statutory maximum, then that statute runs counter to the United States Supreme Court's current interpretation of the Sixth Amendment.

Nor do I agree with the majority that the federal guidelines that survived *Booker* mimic our persistent felony offender statute (majority op at 68). Our system of sentencing is based on statutory minimums and maximums that do not come into play in the federal sentencing scheme. Furthermore, the United States Supreme Court held that the guidelines as applied to *Booker* were unconstitutional and remanded for resentencing (543 US at 267). Nothing in the *Booker* decision changed the fact that judges cannot impose higher sentences than that of the range supported by the facts found by the jury or admitted by defendant.

The test as articulated by the United States Supreme Court is first to look to whether the sentence imposed exceeds the maximum sentence permissible based solely on the jury's findings or defendant's admissions.[5] If the sentence exceeds the scope of the jury's findings or a defendant's guilty plea, the court looks next to see if the increase in sentencing is based solely on the fact of a prior conviction (*see Almendarez-Torres*, 523 US at 235). If the increased sentence is based on any facts beyond that of a prior conviction, then such facts must be found by a jury beyond a reasonable doubt or else the sentence runs contrary to the Sixth Amendment.

Here, defendant Rivera was subject to a CPL 400.20 persistent felony offender hearing that well exceeded the scope of the jury's findings and was unquestionably based on more than only recidivism. Rivera was convicted of a class E nonviolent felony, unauthorized use of a vehicle in the second degree, which would have subjected him to an indeterminate period of imprisonment of a minimum of two years and a maximum of four years based on the jury's findings (and a prior felony conviction) (*see* Penal Law § 70.06 [3] [e]; [4] [b]). Instead, Rivera received a sentence of 15 years to life in prison based on

---

5. The majority argues that the test should be left to the Appellate Division as one of abuse of discretion (majority op at 68-69). However, the United States Supreme Court specifically questioned that approach as related to sentencing in *Blakely* as too subjective and "manipulable" (542 US at 308).

the judge's application of the discretionary persistent felony offender statute which required additional factual findings made by the judge sitting without a jury and employing a preponderance of the evidence standard. Thus, a defendant, having two prior nonviolent, auto-theft related felonies, upon the conviction of a third such felony, can now be subject to an almost identical sentence as a persistent *violent* felon under Penal Law § 70.08 (3). That is not what the Legislature provided.

The trial judge in imposing sentence here relied in part on what he determined to be perjury on defendant's part as well as uncharged marijuana use while in jail. Equally as damaging was the judge's inference that Rivera was guilty of crimes not charged or not considered by the jury.[6] The judge stated:

> "I saw the complainant in this case, somebody who I would describe as a working man, . . . had been a painter with the tools of his trade in his van. It was taken from him. Was it taken by the defendant? The People couldn't prove that. They certainly did prove beyond a reasonable doubt that the defendant used the vehicle . . . ."

The judge further stated:

> "But I also look at the circumstances of that crime, and what struck me is what kind of man Mr. Rivera is . . . [T]his drugged individual was only arrested because he doesn't give a damn about the law [a reference to defendant going through a red light]."

Even more objectionable was this comment:

> "And I would note, of course, the evidence did show, although it didn't go to the jury, the jury didn't have to make a finding of it, that you had some damn good burglar's tools in the van."

These are facts that, if relevant, must be found by a jury if they will result in a life sentence.

In conclusion, *Rosen* was the right decision in terms of the constitutional landscape at the time (*see Brown v Greiner*, 409 F3d 523, 534 [2d Cir 2005] [holding that our interpretation of *Rosen* was a reasonable application of *Apprendi* "as understood at the

---

6. The grand jury issued an indictment for criminal possession of stolen property in the fourth and fifth degrees; however the jury did not consider these charges.

time"]). I joined in that decision and do not retreat from it. However, I must now defer to the United States Supreme Court's interpretation of the Federal Constitution that has developed since our decision in *Rosen*. The majority fails to recognize that the Supreme Court holdings in *Ring*, *Blakely* and *Booker* represent a significant shift in Sixth Amendment jurisprudence. It is thus evident that a *Rosen* analysis is no longer appropriate. It is also evident that our discretionary persistent felony offender sentencing statute contravenes the Sixth Amendment to the United States Constitution as it requires additional factfinding—"the functional equivalent of an element of a greater offense" (*Apprendi*, 530 US at 494 n 19)—beyond that found by a jury or admitted by a defendant.

Accordingly, I would modify the judgment by vacating the sentence and remanding for resentence.

Judges G.B. SMITH, GRAFFEO, READ and R.S. SMITH concur with Judge ROSENBLATT; Chief Judge KAYE dissents in a separate opinion in which Judge CIPARICK concurs; Judge CIPARICK dissents in another opinion in which Chief Judge KAYE concurs.

Order affirmed.